MILLER *v.* DAVIS.

DEEDS—EXECUTION—FORGERY—EVIDENCE.

On a bill by a husband to quiet title to land alleged to have been conveyed to him by his deceased wife, evidence examined, and *held*, to show that the deed to the husband was not a forgery, but was in fact executed by the wife, conveying to him a half interest in the premises, and was valid as against a grantee claiming the premises as a gift from the deceased wife under a subsequent deed.

Appeal from Ingham; Wiest, J.   Submitted October 11, 1905.   (Docket No. 18.)   Decided December 4, 1905. Rehearing denied December 21, 1906.

Bill by Robert Miller against May Patterson Davis and William G. Patterson to correct a description in a deed, and to quiet title.   From a decree dismissing the bill, complainant appeals.   Reversed, and decree entered for complainant.

*Q. A. Smith* and *O. J. Hood*, for complainant.

*L. B. Gardner*, for defendants.

MCALVAY, J.   Complainant filed his bill of complaint

in this case to correct a description of land in a certain deed given to him by his wife, since deceased, and to quiet title to the same as against defendants, who are the children of said wife by a former marriage. The premises in question are situated in the city of Lansing, and the mistake in the description referred to was in describing the land as lot 13 of the D. M. Bagley subdivision of the "*east*" 12 rods of certain lots of block 248 of the city of Lansing, when the subdivision was of the "*west*" 12 rods of said lots. The fact that this mistake occurs in the description of these premises in this deed is not disputed; but the defendants deny that any deed was ever in fact made, executed, or delivered to complainant by his deceased wife. The title to this lot was derived by complainant, Robert Miller, and his son, Charles A. Miller, from one Caroline Bower, June 22, 1896, subject to a mortgage of $1,000. Charles A. deeded his undivided one-half to Willis N. Walker, a son-in-law of complainant, June 29, 1896. October 1, 1896, complainant married Mary Patterson, since deceased. Willis N. Walker deeded his undivided one-half interest to Mary Patterson Miller October 3, 1896. Complainant paid the mortgage of $1,000, and interest, December 17, 1896. He deeded his one-half of the premises to his wife January 12, 1897. Mrs. Miller never paid anything in consideration of these conveyances to her. The deed under which complainant claims title is dated August 1, 1902. The consideration expressed is one dollar, and immediately following the description contains the following clause:

"And it is further stipulated and agreed between the aforesaid parties, that in case the said Robert Miller should survive the said Mary Patterson Miller her entire interest in the above property shall become the property of the said Robert Miller immediately."

On November 18, 1902, Mrs. Miller, in consideration of one dollar and love and affection, by warranty deed conveyed these entire premises to her daughter, the defendant May Patterson. On the same day she deeded some

other property to her son, and a life lease to herself of both properties from the son and daughter was also drawn and afterwards executed. These deeds, the lease, and two other papers, made at the same time, which will be referred to later, were placed in the hands of Mrs. Miller's brother, to be delivered to the children after her death. It appears that the deed of these premises to the daughter was recorded November 21, 1902. Mrs. Patterson died June 21, 1903. Complainant on the day after his wife's death caused the deed in dispute to be duly recorded, and it remained in the office of the register of deeds of Ingham county a short time, until the commencement of this suit, June 29, 1903, when it was given to complainant's solicitor, Mr. Heck, and was kept by him until in October, 1903. There was a substitution of solicitors by complainant, the date of which does not appear.

The foregoing facts are established by the record, without taking into consideration the testimony of any of the parties as to matters equally within the knowledge of the deceased wife. The defense is that this deed of the undivided one-half interest in these premises from the complainant's wife to him is a forgery. The evidence which supports this claim is the testimony of the notary who appears from the record of the deed to have taken the acknowledgment, and the defendant William G. Patterson, who saw the instrument. The acts of the deceased wife with reference to her property, the conduct of the complainant, and the loss of the deed, are also urged as supporting this theory. This notary was a justice of the peace, and, although he positively asserted to complainant and his solicitor, Heck, when he was shown the instrument, that the signature to the acknowledgment was not his, and testified to the same effect, yet in both instances he says that about the date mentioned in the acknowledgment complainant and his wife came to his office to have an instrument executed and acknowledged by him, that the wife signed the paper and he took the acknowledg-

ment; that the complainant went out and brought in two witnesses, who signed as such; that the instrument was already made out when produced by the wife; that these witnesses are the same whose names appeared upon the disputed deed; and that he did not know what the instrument was. These facts are identical with the testimony of the complainant upon this matter. Attention in the case is called to no other deed, and these parties had but one instrument acknowledged and witnessed before the notary. The defendant William G. Patterson testified that he saw this deed and examined the signature of the grantor, and that it was not his mother's signature. Complainant says he took the deed from Mr. Heck to deliver to his present solicitor; that he did not find him in his office; that he drove to these premises with his horse and buggy, hitching the horse near the corncrib; that he took off his coat, in the pocket of which was this deed, and put it in the buggy. The buggy top was up. After storing some beehives in a shed, he put on his coat and went home. The next day he went to his solicitor's office to deliver the deed, and, on reaching into the pocket into which he had put it, found it was not there. He says he searched for it and could not find it, and has not seen it since, and does not know where it is. This deed was lost some months after the notary and one of the defendants had inspected it. Another circumstance in the case is that the wife is dead, as also are Dr. Secor, who, complainant says, drew the deed, and both subscribing witnesses. The wife deeded this and other property to her children, as before stated, and made other writings at the same time relative to desiring to give complainant $300 and a horse and buggy. She also said her property was clear from all incumbrances.

To find that complainant committed a forgery of this instrument and all these signatures, the proof should be clear and convincing. This property came to the wife from the complainant. She never paid anything for it. He paid the mortgage and all the taxes upon it. They

occupied it as their home during their married life. The conveyance to him was a natural and just disposition for her to make under the circumstances. It was not property her children could justly claim. The deed was delivered to him, and, considering the peculiar clause it contained relative to the entire estate to be his if he survived her, it is not unreasonable that he waited until her death before it was recorded. That he so understood it appears from his testimony "that the deed was not to be consummated until after her death; that is why I kept it." Whatever may have been attempted by this deed, whether to create a joint tenancy or to make a testamentary disposition of the undivided half not conveyed, is not clear. It operated in neither respect by reason of her subsequent conveyance to her daughter. Much stress is laid upon the fact that the grantor, the witnesses, and the scrivener are dead. Such fact would certainly give greater opportunity to successfully accomplish a criminal design; but the fact would nevertheless exist if no question had ever been raised concerning the genuineness of the instrument. To discuss or quote at length the testimony in the case relative to the validity of the deed to complainant will be of no benefit to the profession. We are satisfied from all the evidence in the case that the deed in question was not a forgery. It conveyed to complainant an undivided one-half interest in the premises. The conveyance to her daughter was in the nature of a gift. Although purporting to convey the whole premises, she thereby received title only to the one-half interest remaining in her mother.

The decree of the circuit court is reversed, and a decree in accordance with this opinion will be entered in favor of complainant, granting the prayer of his bill of complaint, correcting the description, and confirming him in his title to an undivided one-half of the premises, and removing the cloud therefrom, with costs of both courts in his favor.

MOORE, C. J., and GRANT, BLAIR, and OSTRANDER, JJ., concurred.